UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL QUIGLEY,

        Plaintiff,

    v.

UNITED AIRLINES, INC., et al.,

        Defendants.

Case No. 3:21-cv-00538-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 10

## INTRODUCTION

Plaintiff Michael Quigley worked as a flight attendant for defendant United Airlines, Inc. ("United"), for decades before being terminated in November 2019.  He filed this complaint in state court alleging discrimination, harassment, retaliation, negligent supervision, intentional infliction of emotional distress, breach of contract, and related causes of action for the termination and United's allegedly improper actions leading up to it.  He also sued Elizabeth Jacobsen, the manager who terminated him.  United and Jacobsen removed the case to this court and move to dismiss most claims as preempted by the Railway Labor Act ("RLA") and under Rule 12(b)(6).

The motion is granted.  Jacobsen has been fraudulently joined and she is dismissed from the suit.  The breach of contract claims against United are preempted under the RLA.  The remaining claims against United are not preempted, but they are dismissed because they are poorly pleaded and fail to state a claim on which relief can be granted.  Quigley has leave to amend them.

## BACKGROUND

Because this case is before me on a motion to dismiss, the facts here are drawn from the Complaint or subject to judicial notice.

Plaintiff Michael Quigley was hired by defendant United Airlines ("United") in 1996 as a

United States District Court
Northern District of California

flight attendant.  Complaint ("Compl.") [Dkt. No. 1-3] ¶ 11.  When he filed the Complaint in November 2020, he was 56 years old.  *Id.* ¶ 13.  In January 2019, Quigley was diagnosed with bipolar disorder.  *Id.* ¶14.b.  On January 29, 2019, he "went on protected medical leave" for that disorder.  *Id.* ¶ 14.c.  When he first took leave, it was set to last until May 29, 2019.  *Id.* ¶ 14.d.

When Quigley took medical leave, he informed (unserved) defendant Robert Smith, United's "inflight manager" and Quigley's supervisor, that he was doing so.  *Id.* ¶ 14.c–d.  Quigley alleges that a meeting was supposed to take place between him and Smith in January 2019 but was cancelled because of the leave.  *Id.* ¶ 14.d.  It is unclear what this meeting was supposed to entail.  In April 2019, Smith called and, according to Quigley, "coldly said, 'How are you?  By the way, we still need to have a meeting.'"  *Id.*  Quigley says he responded that he could not because he was on medical leave.  *Id.*  Smith also "referenced that Quigley had not returned his previous phone calls related to the meeting," which Quigley said was because of the leave.  *Id.*

On May 27, 2019 (two days before the leave was allegedly set to end), Quigley applied for long-term disability leave.  *Id.* ¶ 14.e.  United uses Prudential as an administrator for that program. *Id.*  Quigley alleges that United "made a mistake and informed Prudential that Quigley's first date of leave was December 16, 2018 instead of January 2019."  *Id.*  Quigley claims that his protected medical leave was extended to August 16, 2019, but that his disability benefits and health insurance ran out that month because of United's alleged error.  *Id.* 14.f–g.  According to him, he requested that the paperwork be corrected "at least four" times.  *Id.* ¶ 14.g.  But, he alleges, when Smith filled out the paperwork again, "he made the same mistake."  *Id.*  He alleges that this mistake led to denial of his disability leave (because Prudential was not the administrator for that benefit in December 2018).  *Id.*

In September 2019, Quigley informed United that he was ill but could not afford to go to the doctor because of the lost health insurance.  *Id.* ¶ 14.h.  Quigley also states that this loss in health insurance meant that he could not afford medication to treat his HIV.  *Id.*  He claims that he informed several United employees about this.  *Id.*  That month, Quigley alleges that United again attempted to schedule the meeting from January.  *Id.* ¶ 14.i.  On October 6, 2019, Quigley asserts

United States District Court
Northern District of California

that a United administrative supervisor, Kathy Obrien, sent him an email. *Id.* ¶ 14.j.[1]  As he

characterizes it, Obrien told him that he was "non-compliant" with company policy about medical

leave and had to provide documentation to extend his leave.  *Id.*  On October 8, Quigley responded

that, because he had lost his health insurance, he could not afford to get a note from his doctor to

extend his leave.  *Id.* ¶ 14.k.  Obrien reiterated her request for paperwork to "support [his]

absence."  *Id.* ¶ 14.l.  Quigley alleges that he received a "performance warning" on October 8 for

not providing the medical documentation.  *Id.* ¶ 14.m.  In late October, United scheduled a

meeting that Quigley says he was unable to attend due to illness.  *Id.* ¶ 14.n.  Quigley received a

termination later from defendant Elizabeth Jacobsen on November 26, 2019.  *Id.* ¶ 15.a.

Quigley separately alleges that "[t]hroughout his employment, Quigley noticed that

[United] frequently hired flight attendants who were younger."  *Id.* ¶ 14.a.  According to him,

these newer flight attendants made less many than flight attendants who had been there longer.  *Id.*

He claims that, because of this cost-savings, United would schedule the newer flight attendants to

work more flights and keep them on "reserve" more often.  *Id.*  The result, he claims, is that newer

employees were "on call" and worked more hours than "several of the older, long term

employees."  *Id.*  He does not allege that *he* was ever deprived of these opportunities in favor of a

younger or newer employee.

Quigley was a member of the Association of Flight Attendants ("AFA") union.  The AFA

and United were subject to a collective bargaining agreement ("CBA") that generally governed

---

[1] United's request for judicial notice of the full email is DENIED. Dkt. No. 10-1. Under the
incorporation by reference doctrine, I may "take into account documents whose contents are
alleged in a complaint and whose authenticity no party questions, but which are not physically
attached to the plaintiff's pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)
(internal quotation marks and alteration omitted).  United has provided a copy of a document that
purports to be the full email exchange referenced in this portion of the Complaint.  Quigley objects
to taking notice. Although not all of his objections are availing (for instance, he *did* sufficiently
reference the email), the email must be authenticated because he objects.  The sworn declaration
that purports to authenticate the email is by Robert Krabbe, director of labor relations for United.
Dkt. No. 10-2. Krabbe avers that he knows the email is authentic because it "is located within
United's email system, and United stores such documents in the ordinary course of business."  *Id.*
at 2. Krabbe was neither a party to the exchange nor does he state he is the custodian of the
records (or similarly qualified witness) and, therefore, cannot competently testify about the record
system.  *See* Fed. R. Evid. 901, 902(11).  He has not shown that he possesses adequate personal
knowledge to authenticate the email or certify it as self-authenticating.

United States District Court
Northern District of California

Quigley's employment.

Quigley's state court Complaint is dated November 18, 2020.  He alleges twelve causes of action: (1) discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) hostile work environment harassment under FEHA; (3) retaliation under FEHA; (4) failure to provide reasonable accommodations under FEHA; (5) failure to engage in the interactive process under FEHA; (6) failure to prevent harassment, discrimination, and retaliation; (7) breach of express oral contract; (8) breach of implied contract; (9) negligent supervision and retention; (10) wrongful termination in violation of public policy; (11) whistleblower retaliation; and (12) intentional infliction of emotional distress ("IIED").  The disability claims, claims four and five, are not challenged here.  According to sworn declarations, United was served on December 24, 2021, and Jacobsen was served on January 2, 2021.  *See* Dkt. No. 1 at 2.  They removed the case to this court on January 22, 2021, and filed the present motion to dismiss on January 29, 2021. *See* Notice of Removal ("Rem. Not.") [Dkt. No. 1]; Motion to Dismiss ("Mot.") [Dkt. No. 10].  I held a hearing on the motion on March 17, 2021.

## LEGAL STANDARD

## I.        PREEMPTION UNDER THE RAILWAY LABOR ACT

The Railway Labor Act ("RLA") preempts some claims related to employment with an airline.  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994).  The RLA seeks to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes."  *Id.* at 252.  "In order to realize this goal, the RLA provides for mandatory arbitration of two classes of disputes."  *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996).  "Major" disputes—which no party contends are at issue here—are disputes "over the formation of collective bargaining agreements or efforts to secure them."  *Id.* (internal quotation marks omitted).  "Minor" disputes "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."  *Norris*, 512 U.S. at 253.

As relevant here, "[m]inor disputes must be addressed through the CBA's established grievance mechanism, and then, if necessary, arbitrated before the appropriate adjustment board." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 917 (9th Cir. 2018).  This determination—that labor

grievance and arbitration, not litigation in court, is the proper forum for such disputes—is referred to as "preemption." *Id.* Although "the RLA contains no express preemption language," preemption is "implied as necessary to give effect to congressional intent." *Id.*

Importantly, "the RLA does not provide for, nor does it manifest any interest in, national or systemwide uniformity in substantive labor rights." *Id.* at 919. "[W]here a plaintiff contends that an employer's actions violated a state-law obligation, wholly independent of its obligations under the CBA, there is no preemption." *Espinal*, 90 F.3d at 1456. "Setting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states, and will naturally result in labor standards that affect workers differently from one jurisdiction to the next, even when those workers fall under a single labor agreement." *Schurke*, 898 F.3d at 919–20. Accordingly, "Congress did not intend to preempt state law claims simply because they in some respect implicate CBA provisions, make reference to a CBA-defined right, or create a state law cause of action factually 'parallel' to a grievable [CBA] claim." *Id.* at 920 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408–10 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)) (internal citations omitted). Instead, "an application of state law is pre-empted only if such application requires the interpretation of a collective-bargaining agreement." *Id.* (internal quotation marks and alteration omitted).

The Ninth Circuit has cautioned that "[t]he demarcation between preempted claims and those that survive [preemption] is not . . . a line that lends itself to analytical precision." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001).[2] It has developed a two-part inquiry to determine whether a plaintiff's state law claim is preempted.

"First, to determine whether a particular right is grounded in a CBA, we evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the

---

[2] *Cramer* concerned preemption under the Labor Management Relations Act ("LMRA"). But "[t]o determine whether the claim is preempted by the RLA, courts should apply the preemption test used in cases under the . . . LMRA[.]" *Espinal*, 90 F.3d at 1456.

CBA itself." *Schurke*, 898 F.3d at 920–21.  Claims that "arise[] entirely from a right or duty of the CBA" are simply "CBA dispute[s] in state law garb, and [are] preempted." *Id.* at 921.  One traditional example is a claim for breach of the CBA itself.  *See Lueck*, 471 U.S. at 211.  This category of claims is preempted because the CBA is the "only source" of the plaintiff's asserted right and necessarily requires "construing" the CBA.  *Schurke*, 898 F.3d at 921 (internal quotation marks omitted).  In contrast, otherwise viable claims are not preempted at this step simply because they "refer to a CBA-defined right; rely in part on a CBA's terms of employment; run parallel to a CBA violation; or invite use of the CBA as a defense." *Id.* (citing *Livadas*, 512 U.S. at 125; *Lueck*, 471 U.S. at 211; *Lingle*, 486 U.S. at 408–10; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987)) (internal citations omitted).

If a claim falls into the first category, it is preempted.  If it falls into the second, the court moves to step two and "ask[s] whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Id.*  At this step, "claims are only preempted to the extent there is an active dispute over the meaning of contract terms." *Id.* (internal quotation marks omitted).  Accordingly, "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Cramer*, 255 F.3d at 691.  Similarly, merely "consider[ing]," "refer[ing] to," or "apply[ing]" the CBA does not rise to the level of "interpretation" under step two.  *Schurke*, 898 F.3d at 921; *see Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).  Unlike the step one analysis, "the result of preemption at the second step is generally *not* the extinguishment of the state law claim." *Schurke*, 898 F.3d at 922.  Instead, state law claims are only preempted "to [the] degree" that they "depend[] on a dispute over the meaning of a CBA." *Id.* (internal quotation marks omitted).

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.[3]  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

---

[3] Quigley spends much of his brief discussing the standard for 12(b)(6) dismissal.  *See* Oppo. 1, 3–5.  While some of the principles he discusses have carried over, much of his caselaw predates

must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

United and Jacobsen (collectively, for purposes of their arguments, "United") argue that most of Quigley's claims are preempted by the RLA and contend that, if they are not preempted, most are inadequately pleaded. I address each claim in turn but first examine whether I have jurisdiction over the suit.

---

*Twombly* and *Iqbal*. The correct standard for ruling on a 12(b)(6) motion is laid out here.

United States District Court
Northern District of California

# I.     REMOVAL JURISDICTION

Quigley has not moved to remand the case and conceded at the hearing that jurisdiction exists, but I have an independent obligation to ensure I possess subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). Quigley's Complaint alleged he was domiciled in California, and at the hearing on the motion, I indicated my tentative view that I would remand the case because Quigley and Jacobsen were both California citizens. But Quigley's counsel admitted at the hearing that Quigley is, and was at the time of filing, domiciled in Florida (and that the incorrect pleading in the Complaint was the result of a "miscommunication"). Accordingly, there is complete diversity between the parties, satisfying 28 U.S.C. § 1332. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68–69 (1996).

That does not answer the question of whether I have subject matter jurisdiction. When a case is removed on the basis of diversity jurisdiction, removal is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2); *Caterpillar*, 519 U.S. at 68. Jacobsen is a citizen of California (as is Smith, who has not been served), the state in which the action was brought.

United contends that Jacobsen's California citizenship should be disregarded—and that she should be dismissed from the case—because she was fraudulently joined. Quigley does not dispute this in his briefing and did not dispute it at the hearing. For the reasons that follow, I agree that Jacobsen was fraudulently joined. Her citizenship can be disregarded for removal purposes and she will be dismissed from the suit with prejudice.

Fraudulent joinder is a term of art. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "[D]istrict courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). "There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* United does not contend that there has been actual fraud. Instead, it argues that Quigley is unable to establish a cause of action against Jacobsen. Because of the presumption against removal jurisdiction and finding fraudulent joinder, United bears a

"heavy burden," *id.*, of showing that Quigley has "fail[ed] to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Ritchey*, 139 F.3d at 1318. "But the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 548. A finding of fraudulent joinder is warranted only if there is "no possibility" of stating a claim, which the Ninth Circuit has explained is "similar to the 'wholly insubstantial and frivolous' standard" under Rule 12(b)(1). *Id.*

The Complaint references Jacobsen only once; she sent Quigley his termination letter. Quigley brings two of his claims against her: hostile work environment harassment under FEHA and IIED. Under settled California law, neither claim can lie against Jacobsen for mere termination. Quigley has proffered no further allegations he could make against Jacobsen that could save the claims.

I explain the law for FEHA harassment and IIED claims in more detail later. As relevant here, neither cause of action can depend on mere "commonly necessary personnel management actions." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65, 80 (1996); *Zhang v. Walgreen Co.*, No. C 09-05921 JSW, 2010 WL 4174635, at *3 (N.D. Cal. Oct. 20, 2010) (collecting cases). If a termination is discriminatory, it can be the subject of a discrimination suit (which is brought against employers, not supervisors). *Janken*, 46 Cal. App. 4th at 64–65; *Lawler*, 704 F.3d at 1244. If there is something about the personnel action that would elevate it to being IIED or harassment, it can be actionable. *See, e.g.*, *Cordova v. Target Corp.*, No. 2:16-cv-04809-SVW-AJW, 2016 U.S. Dist. LEXIS 114995, at *5 (C.D. Cal. Aug. 26, 2016) (finding a plausible IIED claim when a supervisor used "racially charged statements" and "made several other disparaging comments towards him based on national origin, ancestry, age and parental-status"). But mere termination itself, without more, is not cognizable FEHA harassment or IIED.

Jacobsen's only alleged involvement in the case was terminating Quigley by sending him a termination letter. Courts have often found individual supervisors fraudulently joined when facing similar allegations. *See Tipton v. Airport Terminal Servs., Inc.*, 2019 WL 185687 (C.D. Cal. Jan. 14, 2019); *Ramirez v. Little Caesars Enterprises, Inc*, 2018 WL 5816107 (C.D. Cal. Nov. 2,

2018); Cofer *v. Parker-Hannifin Corp.*, 194 F. Supp. 3d 1014 (C.D. Cal. 2016); *Wexler v. Jensen Pharm., Inc.*, 2015 WL 6159101 (C.D. Cal. Oct. 20, 2015).

This is not a case where the claims against Jacobsen are inadequately pleaded. The only thing she is alleged to have done—terminating Quigley without any arguably discriminatory, harassing, or rude comments or other aggravating circumstances—is not actionable as harassment or IIED under California law. And, as noted, Quigley has raised no argument on the fraudulent joinder issue. There is no colorable claim against Jacobsen and I find that she was fraudulently joined. The claims against her are DISMISSED WITH PREJUDICE and she is DISMISSED from the case. As a result, no properly joined and served defendant is a citizen of California and I have subject matter jurisdiction.

## II.    DISCRIMINATION

Quigley's first claim for relief is discrimination in violation of FEHA. Compl. ¶¶ 21–27. Even though the Complaint attempts to allege age and disability discrimination, Quigley's brief solely focuses on age discrimination. *See* Oppo. 5–6 (identifying age as the only relevant protected class and concluding Quigley "plead[s] sufficient facts for his age discrimination claim"). I proceed on that basis.

As relevant here, it is unlawful under FEHA "[f]or an employer, because of the . . . age . . . of any person, to . . . discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." CAL. GOV'T CODE § 12940(a); *see also id.* § 12941. The California Supreme Court has explained that "[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000). As a result, California courts have adopted the *McDonnell Douglas* framework for evaluating these claims. *Id.*; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Although that framework ultimately calls for a burden-shifting analysis, evidence is not at issue on a 12(b)(6) motion, so Quigley need only plausibly allege a prima facie case. While "[t]he specific elements of a prima facie case may vary depending on the particular facts," the plaintiff generally "must provide evidence that (1) he was a member of a protected class, (2) . . . was

performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355.

## A.  RLA Preemption

Discrimination claims are usually not preempted by the RLA because state antidiscrimination law creates an independent duty not to discriminate, and the accompanying cause of action does not depend on and cannot be altered by the CBA. *See Schurke*, 898 F.3d at 919; *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999) ("[R]ights created by . . . anti-discrimination statutes such as Title VII and California's Fair Employment and Housing Acts are independent of a CBA and thus claims brought pursuant to these acts are not minor disputes."). An employer and employee cannot bargain around antidiscrimination provisions and agree that unlawful discrimination is permitted.  But, as with any claim, a discrimination claim can be preempted to the extent that it requires interpretation of a CBA provision. *See, e.g.*, *Armstrong v. WB Studio Enterprises, Inc.*, No. CV 19-9587-GW-JPRX, 2020 WL 1967566, at *3–*4 (C.D. Cal. Apr. 24, 2020) (collecting cases).

It is unclear what Quigley's discrimination claim entails.  The only concrete discrimination he alleges is in the flight attendant assignment system, but he does not contend that the alleged disparity affected him or that it is causally connected to his alleged injuries.  United's primary argument for preemption is that those flight attendant assignments turn on interpretation of the CBA, which governs how flight attendants are assigned.  Because this alleged discrimination never happened to Quigley, I cannot say his claim is preempted on this basis.  Moreover, United points to no contested CBA provision that would require interpretation.  If Quigley's discrimination claim is predicated on his termination and alleged poor treatment while he was on leave, it would be even further removed from the reach of the CBA.  Although it appears that the claim will not be preempted, United may raise this objection later to any amended complaint, if appropriate.  For now, the claim is not preempted.

## B.  Failure to State a Claim

The paragraphs that comprise this cause of action are conclusory legal elements.  It is not

United States District Court
Northern District of California

even clear, as is stated in the brief, that Quigley is only pursuing an age discrimination claim. The claim would need to be repleaded on that basis alone. Nonetheless, I address the theory Quigley advances in his brief.

There is no dispute that Quigley was over 40 years of age and that he suffered an adverse employment action when he was terminated. Quigley also states in his brief that another adverse employment action might be "different treatment," Oppo. 6, but there is no suggestion of what that is in the brief, let alone in the Complaint, and Quigley does not elaborate beyond this nebulous two-word statement. He might mean receiving calls from Smith, but there is no indication that younger employees who took unauthorized sick leave did not get similar calls.

The only reference to any age-based bias in the Complaint is the alleged differential scheduling of flight attendants based on longevity with the company. Quigley does not allege that this happened to him, so there is no connection between it and his termination. Construed liberally, Quigley's argument is that this alleged differential treatment in scheduling is evidence of a discriminatory motive by United *generally* that infected his employment decision. But Quigley must plead some plausible connection between his termination and discrimination. *Guz*, 24 Cal. 4th at 355. To be sure, employment discrimination plaintiffs will not always have all of the information related to the behind-the-scenes process that went into their adverse employment decision when they file their complaint. But they must still plead *some* circumstance suggesting that the employment action was discriminatory as to them. *Id.* Quigley has not.

## III.   HARASSMENT

Quigley's second claim is for harassment due to a hostile work environment as a result of age and disability in violation of the FEHA. Compl. ¶¶ 28–35. His sixth claim is for failure to prevent discrimination, harassment, and retaliation. *Id.* ¶¶ 59–66. United does not challenge the latter under Rule 12(b)(6).

"FEHA prohibits harassment of an employee." *Lawler*, 704 F.3d at 1244; *see also* Cal. Gov't Code § 12940(j). A plaintiff must demonstrate that "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Id.* "Harassment cannot be

occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 131 (1999) (internal alterations and citations omitted).

California courts have drawn certain lines between harassment and discrimination claims. Although both require membership in a protected group, actions are not generally harassment under FEHA if they are "of a type necessary to carry out the duties of business and personnel management." *Janken*, 46 Cal. App. 4th at 65. Such actions include "commonly necessary personnel management actions" like "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off." *Id.* at 64–65. Harassment, in contrast, "consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Lawler*, 704 F.3d at 1245. In separating commonly necessary personnel management actions from harassment, FEHA does not permit those actions to be discriminatory. Rather, "[t]hese actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment." *Janken*, 46 Cal. App. 4th at 65.

Additionally, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), *as modified* (Feb. 10, 2010). This message can be established, the California Supreme Court explained, "when the actions establish a widespread pattern of bias." *Id.*

## A. RLA Preemption

United's argument that this claim is preempted is identical to its argument for the discrimination claim. As explained above, I reject that argument for now. Once the basis of Quigley's claim is made clearer, United may raise it again if appropriate.

## B. Failure to State a Claim

I have already addressed why the second claim for harassment is inadequately pleaded

against Jacobsen. It is no better when it comes to United. The paragraphs that make up the harassment count itself are, again, conclusory legal elements. Quigley does, however, incorporate the other allegations of the Complaint. His *brief* focuses on seven allegations: (1) "antagonistic and hostile non-job-related comments"; (2) his termination; (3) United's alleged "refusal to address discrimination and harassment"; (4) younger flight attendants being scheduled to work more flights and being put on reserve more often; (5) being contacted multiple times to reschedule the meeting while on leave; (6) the paperwork mistakes; and (7) his written discipline. Oppo. 6. These actions, Quigley argues, "sent a discriminatory message to plaintiff that she [sic] was unwelcome in the work place." *Id.*

I take each allegation in turn. The only concrete "comments" alleged are by Smith, who is only referenced twice, and Obrien, who is only referenced once. Smith allegedly called Quigley in April 2019 and, according to Quigley, "coldly said, 'How are you? By the way, we still need to have a meeting.'" He allegedly followed it up with a reference to Quigley not returning his calls about rescheduling the meeting. These managerial statements, by themselves, are not actionable harassment under the statute. *Janken*, 46 Cal. App. 4th at 64–65; *Lawler*, 704 F.3d at 1244.

The second Smith reference is because he allegedly filled out Quigley's paperwork incorrectly. Again, this is a run-of-the-mill personnel action and mistake. There is also no indication that either of Smith's alleged actions, or the combination of them, demonstrate a "widespread pattern of bias." *Roby*, 47 Cal. 4th at 709.

Obrien informed Quigley he was not compliant with policy and needed to submit documentation, which is likewise merely managerial. This comment, and the ones by Smith, are plainly job related, so it is unclear what "non-job-related comments" Quigley is talking about.[4]

---

[4] There are several signs that Quigley's brief is not the product of attentive, individualized advocacy. At one point, the brief—while not quoting anything else—states that what occurred was "severe and pervasive enough to alter the terms of *Tipton's* employment." Oppo. 11 (emphasis added, original emphasis removed). After discussing the nonexistent "non-job-related comments," the brief states that the alleged harassment sent a discriminatory message "to plaintiff that *she* was unwelcome." Oppo. 6 (emphasis added). At another point, the brief does not quote anything but inserts a bracketed correction as if a section of some other document has been copied-and-pasted but not quoted or attributed. *Id*. 13. While each of these might individually be written off as a minor error, the cumulative impression is that much of the brief has been copied and pasted from other cases, not written to address Quigley's particular situation.

14

United States District Court
Northern District of California

1    Next, Quigley's termination, the rescheduling of the meeting, the paperwork mistakes, and

2    the written discipline are not (as pleaded) actionable harassment.  They are all managerial

3    personnel actions with no aggravating circumstances.  *Janken*, 46 Cal. App. 4th at 64–65; *Lawler*,

4    704 F.3d at 1244.

5    Quigley's nebulous assertion of "refusal to address discrimination and harassment" is

6    insufficient under the pleading standard.  There is no way for United (or me) to know in what

7    ways Quigley contends United failed to prevent or remedy discrimination or harassment.  Even

8    construing the Complaint liberally (and going beyond what is provided in Quigley's brief), the

9    only alleged discrimination is the claimed disparate treatment of younger and older flight attends

10   in flight assignment and reserve selection.  Quigley does not allege that he was ever subject to this.

11   Quigley passingly cites *Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal. App.

12   4th 1336 (2011), but the actions there were significantly more extreme than here and were found

13   *not* to constitute harassment.  Among other things, the evidence of gender-based harassment there

14   was of an email calling the plaintiff a "big-titted, mindless one" sent between coworkers, a male

15   employee asking women to sit on his lap while dressed as Santa Claus, an employee wearing a

16   "veil . . . with a plastic penis attached" in a staff meeting, and a supervisor asking questions about

17   the plaintiff's sex life.  *Brennan*, 199 Cal. App. 4th at 1353–58.

18   Although Quigley's theory is somewhat unclear, maybe he thinks that some or all of these

19   actions had a secondary effect of communicating a hostile message and therefore are adequate.

20   *See* Oppo. 7–8.  The allegations here do not plausibly show a pervasive atmosphere of bias based

21   on age.  *See Roby*, 47 Cal. 4th at 709.

22   Quigley also briefly attempts to connect the firing to his disability.  Again, because this is a

23   harassment claim, he would need to plead sufficiently pervasive bias that led to a hostile message,

24   which the termination and mistakes on the insurance forms do not plausibly show.  Further, the

25   only alleged *discriminatory* acts on which Quigley bases his claims has to do with the flight

26   attendant assignments, which is connected to age, not disability.

27   **IV.    BREACH OF CONTRACT**

28   Quigley's seventh claim for  relief is a breach of express oral contract not to terminate him

1    without good cause.  Compl. ¶¶ 67–70.  His eighth claim for relief is breach of an implied-in-fact

2    contract not to terminate him without good cause.  Compl. ¶¶ 71–73.  The crux of both claims is

3    the same: Quigley and United entered into a contract—through, respectively, words and acts—that

4    he would be terminated only for good cause but that it lacked good cause to terminate him.

5         In California, there is a statutory presumption that employment is at will.  CAL. LAB. CODE

6    § 2922; *Guz*, 24 Cal. 4th at 335.  That presumption, however, can be overcome if the employer

7    and employee provide otherwise by contract.  *See Guz*, 24 Cal. 4th at 335–36.  The common

8    alternative is "an agreement that the employee will be terminated only for 'good cause.'"  *Id.* at

9    336.  This "contractual understanding need not be express, but may be implied in fact, arising

10   from the parties' conduct evidencing their actual mutual intent to create such enforceable

11   limitations."  *Id.*

12        An express contract is created when its "terms . . . are stated in words."  CAL. CIV. CODE §

13   1620.  An implied-in-fact contract "consists of obligations arising from a mutual agreement and

14   intent to promise where the agreement and promise have not been expressed in words."  *Retired*

15   *Employees Assn. of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (internal

16   quotation marks omitted); *see also* CAL. CIV. CODE § 1621.  In both cases, "[c]ontract formation

17   requires mutual consent, which cannot exist unless the parties agree upon the same thing in the

18   same sense."  *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109 (2013) (internal quotation

19   marks omitted).  When determining whether an implied-in-fact contract exists, courts look to

20   numerous factors, including "the personnel policies or practices of the employer, the employee's

21   longevity of service, actions or communications by the employer reflecting assurances of

22   continued employment, and the practices of the industry in which the employee is engaged."  *Guz*,

23   24 Cal. 4th at 336–37.  The touchstone is the "actual understanding of the parties."  *Id.* at 337.

24        In *Boatwright v. Pacific Gas & Electric Co.*, No. 16-cv-02378-WHO, 2017 U.S. Dist.

25   LEXIS 183040 (N.D. Cal. July 6, 2017), I examined a similar claim.  There, the plaintiff argued

26   that the parties had an agreement that he could only be terminated for good cause.  *Boatwright*,

27   2017 U.S. Dist. LEXIS 183040, at *11–*12.  I explained that his claim for breach of that

28   agreement was preempted under Section 301 of the LMRA because it was "clearly grounded in

United States District Court
Northern District of California

16

the CBA." *Id.*, at *12.  A breach of contract claim like that, I found, was "based on the employment relationship dictated by the CBA." *Id.*

Because LMRA and RLA preemption are coextensive, *Espinal*, 90 F.3d at 1456, the same result obtains here.  Further, the analysis of whether a good-cause employment agreement has been created or breached turns in substantial part on the nature of the other contractual or policy documents between the parties.  *See Guz*, 24 Cal. 4th at 337.  Here, the most important contractual document is the CBA.  Accordingly, the claims are preempted.

## V.    NEGLIGENT HIRING, SUPERVISION, AND RETENTION

Quigley's ninth cause of action is for negligent hiring, supervision, and retention.  Compl. ¶¶ 74–76.  Once again, Quigley's Complaint contains only bare allegations that fail to satisfy the pleading standard.  *See, e.g.*, Compl. ¶ 76 (asserting, without elaboration, things such as "Defendants breached these duties").  It does not put United on adequate notice of the basics of Quigley's theory, including what employee was allegedly negligently hired, supervised, or retained.  In his brief, Quigley reveals the basis for his claim: he argues that United retaining Smith despite his allegedly "harassing conduct" was negligent.  Oppo. 8.

In California, "[a]n employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Alexander v. Cmty. Hosp. of Long Beach*, 46 Cal. App. 5th 238, 264 (2020) (internal quotation marks omitted).  Because this type of claim is a species of negligence, a plaintiff must show: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  This liability "is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996).  To establish liability for negligent supervision, "a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015).

### A.  RLA Preemption

United argues that this claim requires interpretation of the CBA because the "duty of care"

17

owed to Quigley cannot be determined without reference to the CBA.  Mot. 14.  The main case United cites for that proposition (and the cases it relies on), however, preempted claims for negligent *interference with economic relations*.  *See Jessen v. N. Cal. Off Track Wagering, Inc.*, No. CV1401557DMGMRWX, 2014 WL 12886610, at *4 (C.D. Cal. Sept. 29, 2014).  And that type of claim requires a "special relationship" between the parties.  *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979).  In the cases United relies on, courts reasoned that *determining whether such a special relationship existed* required resort to the CBA.  *See Jessen*, 2014 WL 12886610, at *4.

Here, United has not pointed to a single CBA provision—let alone a contested one that requires interpretation—that would affect the duty owed.  The duty of care owed on a negligence claim like this is to act with reasonable care, an independent legal standard that does not turn on any CBA provision.  *Mendoza*, 66 Cal. App. 4th at 1339.  United also cites a case in which the alleged negligence was an employee's lack of *qualifications*, which was governed by the CBA.  *See Dean v. Norfolk S. Ry. Co.*, No. 4:13-CV-2622, 2015 WL 1423456, at *10 (N.D. Ohio Mar. 27, 2015), *aff'd* (Apr. 6, 2016).  The issue here is negligent retention based on alleged improper conduct, not based on qualifications, and United failed to identify an actual CBA provision that would need to be interpreted.  This claim is not preempted.

## B.  Failure to State a Claim

As explained above, Quigley's Complaint fails to plead the most basic facts about his claim.  Dismissal with leave to amend would be appropriate because his theory, even if it was colorable, is not pleaded.  But the theory Quigley spells out in his brief is not viable.  As I explained earlier, Smith's paperwork error and attempts at rescheduling the meeting do not plausibly amount to harassment (absent, presumably, some indication the error was intentional).  There is also no authority for the proposition that an employer is *negligent* merely because one employee fills out one form incorrectly—even if that form is quite important—and it nonetheless retains him.  Nor does a paperwork error like the one here evidence that an employee is "unfit" for his job.  This all aside, there is no allegation that United knew or should have known Smith would make this error.  *Cf. Cty. of Riverside*, 238 Cal. App. 4th at 903–04; *Juarez v. Boy Scouts of Am.*,

*Inc.*, 81 Cal. App. 4th 377, 395 (2000).  While Quigley, on his account, was harmed by Smith's mistake, harm alone is insufficient to create negligence.  And because there is no allegation of foreknowledge, terminating Smith after the fact would not have avoided Quigley's harm.  For all of those reasons, this claim is dismissed.

## VI.     RETALIATION

Quigley's third claim for relief is retaliation under the FEHA.  Compl. ¶¶ 36–42. Quigley's tenth claim for relief is for whistleblower retaliation in violation of California Labor Code § 1102.5, *et seq.*  Compl. ¶¶ 83–89.  United attacks the former claim only under the RLA. My analysis of these two retaliation claims for RLA purposes is the same, so I address them together.  I do not address whether the FEHA retaliation claim is adequately pleaded because United does not challenge it on that ground.  Quigley argues in his brief that he pleads a retaliation claim based on informing Obrien that Smith had filled out the paperwork incorrectly.  Oppo. 9.

The Section 1102.5 claim requires that "(1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation."  *Ross v. Cty. of Riverside*, 36 Cal. App. 5th 580, 591 (2019) (internal quotation marks omitted).  A prima facie case consists of showing that "(1) the plaintiff engaged in protected activity, (2) the defendant subjected the plaintiff to an adverse employment action, and (3) there is a causal link between the two."  *Id.*  While "an employee need not prove an actual violation of law," he must at least show that "the employer fired him for reporting his 'reasonably based suspicions' of illegal activity." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 87 (1998).

### A.  RLA Preemption

*Norris*, one of the foundational RLA cases, concerned a termination in alleged violation of a whistleblower protection statute.  The Supreme Court explained that the claim was, like an antidiscrimination claim, separate from and not governed by the CBA.  *Norris*, 512 U.S. at 266. The Ninth Circuit reached the same conclusion about another whistleblower statute.  *Fennessy v. Sw. Airlines*, 91 F.3d 1359, 1362 (9th Cir. 1996).  United nonetheless contends the claims are preempted because the alleged unlawful activity here—Smith's paperwork mistake—depends on

interpreting the provisions of the CBA that govern medical documentation and leave.  Once again, United's vague references to CBA provisions are unavailing.  It fails to show that any of them actually will require *interpretation*.

### B.  Failure to State a Claim

Just as with every claim addressed, this one is limited to bare legal assertions, not factual allegations that would put United on notice to respond.  That aside, the theory Quigley spells out in his brief does not demonstrate an adequately alleged whistleblower claim.  If his argument is that he was whistleblowing on Smith due to *harassment*, I have already explained why the paperwork mistake cannot be, alone, actionable harassment.  If his argument is that he was whistleblowing on Smith for filing out the form incorrectly, there is no hint that such activity was illegal or that Quigley had a reasonable suspicion it was illegal.  He pleads no plausible causal link between this complaint to Obrien and the termination; among other problems, the wheels of the discipline were already spinning when Quigley mentioned this about Smith.  Quigley has failed to state a Section 1102.5 claim.

## VII.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Quigley's twelfth cause of action is IIED.  Compl. ¶¶ 90–94.  "To state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Vasquez v. Franklin Mgmt. Real Est. Fund, Inc.*, 222 Cal. App. 4th 819, 832 (2013) (internal quotation marks and alteration omitted).  In this context, "outrageous conduct" means conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009).  It is not sufficient that the conduct be "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Lawler*, 704 F.3d at 1245.  And, as noted, mere managerial statements also cannot constitute IIED.

Once again, Quigley's Complaint does not state anything more than conclusory legal assertions about United's behavior.  His brief argues that the only conduct that amounts to IIED is

United States District Court
Northern District of California

20

by Jacobsen and Smith and that United's role is simply that it acted "by and through them."

Oppo. 10.

### A.  RLA Preemption

The claim is not preempted.  IIED claims arising out of employment relationships may often be preempted because they arise from or require interpretation of CBAs.  *See, e.g.*, *Scott v. Machinists Auto. Trades Dist. Lodge No. 190*, 827 F.2d 589, 594 (9th Cir. 1987).  Here, however, Quigley concedes that his IIED claim is "derivative" of the discrimination and harassment claims.  Oppo. 18.  For the reasons explained above, the claim does not arise out of the CBA nor does it depend on interpreting any specific provision.  *See Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir. 1991) (holding IIED claim not preempted to the extent it depended on on-the-job harassment).  None of United's cases are to the contrary; generally, they found IIED claims preempted because the allegedly outrageous acts were based on job functions governed by provisions of CBAs or turned on whether a manager's actions were permitted by the CBA.  *See Scott*, 827 F.3d at 1088.  Neither is true here.

### B.  Failure to State a Claim

As noted, the managerial acts doctrine that applies to harassment also applies to IIED. *Janken*, 46 Cal. App. 4th at 64–65.  For the reasons explained above, Jacobsen terminating Quigley is not IIED as a matter of law.  And just as they do not constitute harassment, Smith's rescheduling attempts and paperwork error also cannot constitute IIED.

Further, courts regularly dismiss IIED claims in which the supervisors' behavior was more outrageous than here.  *See, e.g.*, *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) (no IIED where a "supervisor screamed and yelled in the process of criticizing her performance, threatened to throw her out of the department and made gestures she interpreted as threatening").  The cases that Quigley relies on that permitted IIED claims to proceed are also far more extreme than this one.  *See, e.g.*, *Cordova v. Target Corp.*, No. 2:16-cv-04809-SVW-AJW, 2016 U.S. Dist. LEXIS 114995, at *5 (C.D. Cal. Aug. 26, 2016) (finding a plausible IIED claim when a supervisor used "racially charged statements" and "made several other disparaging comments towards him based on national origin, ancestry, age and parental-status").  These acts are not outrageous

beyond the bounds of civilized behavior.[5]

## CONCLUSION

The claims against Jacobsen are DISMISSED WITH PREJUDICE and she is dismissed from the case.  Claims seven and eight are DISMISSED WITH PREJUDICE as preempted by the RLA.  Claims one, two, nine, eleven, and twelve are DISMISSED WITH LEAVE TO AMEND. Any amended complaint shall be filed within 20 days.  Quigley's counsel is advised to only amend claims that have facts to support them and to state those facts in the amended complaint, not in the briefing that will follow on a motion to dismiss.

**IT IS SO ORDERED.**

Dated: March 29, 2021

William H. Orrick
United States District Judge

---

[5] United briefly argues the claim is also foreclosed by California's workplace compensation framework.  Quigley does not address this argument.  I do not either, because I grant United's motion on other grounds.  If Quigley chooses to reallege the IIED claim against United, he must be prepared to explain why it is not foreclosed on that basis.