UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL QUIGLEY,

    Plaintiff,

v.

UNITED AIRLINES, INC., et al.,

    Defendants.

Case No. 3:21-cv-00538-WHO

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: Dkt. No. 28

Plaintiff Michael Quigley worked as a flight attendant for defendant United Airlines, Inc. ("United"). He alleges discrimination, harassment, and related claims based on disability. United moves for judgment on the pleadings (based on a failure to state a claim) on three of Quigley's claims: hostile work environment harassment, intentional infliction of emotional distress ("IIED"), and negligent supervision. The harassment claim is plausibly pleaded and survives. Quigley has abandoned his defense of the IIED claim based on his repeated failure to respond to United's argument despite explicit warnings, so it is dismissed with prejudice. The negligent supervision claim is inadequately pleaded, but dismissal is with leave to amend because it appears possible that Quigley can cure the deficiencies.

**BACKGROUND**

**I. FACTUAL BACKGROUND**

Plaintiff Michael Quigley, a Florida resident, was employed by United as a flight attendant beginning in 1996. First Amended Complaint ("FAC") [Dkt. No. 20] ¶¶ 1, 11. In October 2018, Quigley had a heart attack and was approved to take medical leave until December 2018. *Id.* ¶ 14a. He alleges that, before he went on leave, he was "primarily assigned to international flights." *Id.* International flights, he claims, afforded him 31 "in-flight hours" per flight. *Id.* When he

returned from medical leave, though, he alleges that he was "exclusively" assigned to domestic flights, which gave him only four in-flight hours per flight. *Id.*

In January 2019, Quigley was diagnosed with bipolar disorder. *Id.* ¶ 14b. He also references having depression and anxiety. *Id.* ¶ 14c. He took medication for these conditions and "openly discussed his condition and need to take medicine with his colleagues, including Paul [Dhesi], and Mindy Drake." *Id.* According to Quigley, he "discovered [Dhesi] and Drake emptying 2 bottles of red wine into their own receptacles"; he confronted them about it and Dhesi alleged told Quigley, "[g]o take your pills!" *Id.* ¶ 14d. He asserts that this "deeply offended" him. *Id.* After that, he claims that he "regularly found himself being shunned and ostracized by his coworkers," "felt unwelcomed in the workplace," and "often found it difficult to perform his job duties, as he was required to collaborate with these colleagues." *Id.*

In late January, Quigley went on medical leave for his bipolar disorder. *Id.* ¶ 14e. He alleges that he informed now-dismissed defendant Robert Smith, a United inflight manager, and United's benefits manager that he would be doing so. *Id.* The leave was set to last until May 29. *Id.* In April 2019, Smith allegedly called Quigley and, as Quigley puts it, "coldly said, 'How are you? By the way, we still need to have a meeting.'" *Id.* ¶ 14f (emphasis removed). As I noted in my previous Order on Motion to Dismiss ("Prior Order") [Dkt. No. 16], "[i]t is unclear what this meeting was supposed to entail." Prior Order 2. Quigley still does not reveal that information. He does say that the meeting was supposed to take place in January 2019 but was cancelled because of the medical leave. FAC ¶ 14f. Quigley says that because "Smith was trying to reschedule the meeting while he was still on leave, Quigley protested, 'no I am on medical leave.'" *Id.* (emphasis removed). Smith allegedly also "referenced" Quigley not returning previous phone calls about that meeting; Quigley repeated that he was on leave and so did not respond. *Id.*

Two days before his medical leave was set to end, Quigley applied for long-term disability leave through Prudential, which United uses as an administrator for that benefit. *Id.* ¶ 14g. According to Quigley, United "made a mistake and informed Prudential that Quigley's first date of leave was December 16, 2018 instead of January 2019. Because of [United's] mistake,

2

Prudential denied Quigley's disability leave because it was not the third-party administrator for . . . December 2018." *Id.* Quigley was "devastated" by this denial. *Id.*

Quigley's medical leave was then extended to August 16, 2019. *Id.* ¶ 14h. When August came, Quigley's disability benefits ran out because of the error referenced above. *Id.* ¶ 14i. As a result, Quigley's health insurance was terminated. *Id.* Quigley alleges that he asked an employee of United to fix the paperwork at least four times. *Id.* At some point, Smith also again tried to fill out the paperwork but "made the same mistake." *Id.* Although, as noted, Quigley says his health insurance was already terminated, he also claims that Smith's second alleged error caused his health insurance and disability benefits to be terminated. *Id.* This negatively impacted his ability (Quigley does not allege to what extent) to treat his "HIV, stress, anxiety, depression, and bipolarism" and meant that he could not afford to see a doctor. *Id.*

In September 2019, Quigley told United that he was sick but could not afford to go to the doctor. *Id.* ¶ 14j. He alleges that United required him to provide a doctor's note to continue taking leave. *Id.* He claims that he informed United employees about his inability to afford medication, treat his HIV, or go to the doctor. *Id.* Quigley contends that United (he does not say which employee) once again tried to schedule the meeting that had been cancelled. *Id.* ¶ 14k. In October 2019, administrative supervisor Kathy O'Brien sent Quigley an email, as he characterizes it, "accusing him of being non-compliant with his medical leave since September 1, 2019 because he had not provided additional documentation to extend his medical leave." *Id.* ¶ 14l. She asked Quigley to submit documentation. *Id.* Quigley replied, explained the situation, and said that he could not afford to get a doctor's note. *Id.* ¶ 14m. O'Brien reiterated that he needed to submit the proper paperwork and told Quigley, "I'm requesting that you provide the medical documentation to support your absence. Unfortunately, this will be followed by a written directive as well." *Id.* ¶ 14n (internal quotation marks and emphasis omitted). That day, Quigley received a performance warning for failing to provide the documentation for this leave and leave in 2017 and 2018. *Id.* ¶ 14o. In late October, United scheduled the meeting with Quigley with "a few days' notice" but he was not able to attend due to illness. *Id.* ¶ 14p.

On November 26, 2019, Quigley received a termination letter from Elizabeth Jacobsen,

3

whom I previously dismissed from the suit as fraudulently joined. *Id.* ¶ 15a; Prior Order 10. He claims that he has suffered various damages, including in lost income and benefits and psychological and emotional distress. FAC ¶¶ 16–18.

## II. PROCEDURAL BACKGROUND

Quigley filed his original complaint in state court against United, Smith, and Jacobsen. Smith was never served. Prior Order 8. United and Jacobsen removed the case to this Court, Dkt. No. 1, and moved to dismiss, Dkt. No. 10. Quigley did not move to remand the case.

In the Prior Order, I dismissed Jacobsen from the suit as fraudulently joined: the only thing she was alleged to have done was transmit the termination letter, which was not actionable harassment or IIED. Prior Order 10. United also moved to dismiss most of the claims as preempted by the Railway Labor Act; while I agreed with it that two breach of contract claims were preempted, I otherwise denied that portion of its motion. I agreed with United, however, that all the claims it challenged failed to state a claim on which relief could be granted. Accordingly, I dismissed most of the claims with leave to amend.

Quigley filed his FAC on March 19, 2021. It contains nine causes of action against United: (1) discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) hostile work environment harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure to provide a reasonable accommodation in violation of FEHA; (5) failure to engage in the interactive process in violation of FEHA; (6) failure to prevent discrimination, harassment, and retaliation; (7) negligent hiring, supervision, or retention; (8) wrongful termination in violation of public policy; and (9) IIED. The same day the FAC was filed, Quigley and the defendants agreed to dismiss all defendants except United from the action. Dkt. No. 18. The parties apparently agreed to do so in exchange for United answering the complaint, Dkt. No. 20, instead of moving to dismiss. In the motion before me, United only moves for judgment on the harassment, negligent hiring/supervision/retention, and IIED claims. *See generally* Motion for Judgment on the Pleadings ("Mot.") [Dkt. No. 28].

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(c) provides that, "[a]fter the pleadings are

4

closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings can "raise the defense of failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). When that is so, the court employs "same test as a motion under Rule 12(b)(6)." *Id.*

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Because the standards are functionally the same, judgment on the pleadings can be granted with leave to amend. *See, e.g.*, *Pac. W. Grp., Inc. v. Real Time Sols., Inc.*, 321 F. App'x 566, 569 (9th Cir. 2008).

**DISCUSSION**

United moves for judgment on three claims. I address each in turn.

**I. HARASSMENT**

Quigley's second cause of action is for hostile work environment harassment in violation of FEHA. FAC ¶¶ 28–35. "FEHA prohibits harassment of an employee." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013); *see also* CAL. GOV'T CODE § 12940(j). Under FEHA, a plaintiff must demonstrate that "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Id.* "Harassment cannot be occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 131 (1999) (internal alterations and citations omitted).

As a general matter, actions are not FEHA harassment if they are mere "commonly necessary personnel management actions." *Lawler*, 704 F.3d at 1244; *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65, 80 (1996). Such actions are those "of a type necessary to carry out the duties of business and personnel management." *Janken*, 46 Cal. App. 4th at 65. They usually include things like "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off." *Id.* at 64–65. Harassment, on the other hand, "consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Lawler*, 704 F.3d at 1245. This does not mean that employers can act discriminatorily and cloak their actions in the garb of the management exception; instead, "[t]hese actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment." *Janken*, 46 Cal. App. 4th at 65.

In addition to discrimination liability, the California Supreme Court has held that the managerial acts doctrine has another limitation: "some official employment actions done in

6

furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), *as modified* (Feb. 10, 2010). To establish this sort of liability, the actions must "establish a widespread pattern of bias." *Id.*

I previously granted United's motion to dismiss this claim with leave to amend. Prior Order 12–15. I explained that "[t]he paragraphs that make up the harassment count itself are, again, conclusory legal elements" and that Quigley's brief focused on seven allegations that allegedly "sent a discriminatory message to plaintiff that she [sic] was unwelcome in the work place." *Id.* 14 (internal quotation marks omitted) (quoting Quigley's Opposition). As I noted, Quigley's claims were "poorly pleaded," *id.* 1, and were in other ways quite muddled. The discrimination claim—the evidence for which was closely related to the harassment claim, as these cases often are, *see Roby*, 47 Cal. 4th at 710—was pleaded about both disability and age discrimination, yet Quigley's brief only defended an age discrimination claim. *See* Prior Order 10. Accordingly, I identified seven separate incidents that Quigley focused on to establish harassment but found that, separately or in combination, they did not plead an adequate claim. *See id.* 13–15. To take a few examples, Quigley argued that there were "antagonistic and hostile non-job-related comments" but he had identified none. *Id.* 13. Quigley also alleged that newer flight attendants were given better schedules, which he argued evidenced discrimination based on age (but did not relate to disability). *Id.* The upshot is that Quigley's pleading and brief were confused and unclear.

Now, Quigley has shifted focus purely to disability-based harassment, dropped the muddled age-based pleading, and added more allegations. Taken as a whole, the FAC gets Quigley over the plausibility line on this claim. He alleges that before he went on medical leave, he was frequently assigned to more desirable international flights but when he came back, he was "exclusively" put on less desirable domestic flights. FAC ¶ 14a. One of his co-workers told him to "[g]o take [his] pills!" which "deeply offended" him. *Id.* ¶ 14d. Afterward, he was "regularly . . . shunned and ostracized by his coworkers" and "felt unwelcome in the workplace." *Id.* And while on approved medical leave, several United employees repeatedly contacted him to set up a

7

meeting during that time, even though he was permitted to not work. *Id.* ¶¶ 14f–14g. United repeatedly failed to correct the paperwork error discussed above, even though he repeatedly contacted them about it, resulting in termination of his health insurance. *Id.* ¶¶ 14i–14n. Despite his lack of health insurance, United demanded that he produce a doctor's note, even when he told them he could not do so due to their error. *Id.* He was eventually terminated for this. *Id.* ¶ 14p.

All of this together plausibly indicates a "widespread pattern of bias" that sent a secondary hostile message to Quigley that he was unwelcome due to his disability. *See Roby*, 47 Cal. 4th at 709. That pattern is plausible in part because harassment "is generally concerned with the message conveyed to an employee, and therefore with the social environment of the workplace." *Id.* at 763 (emphasis removed). From what Quigley has alleged, it is plausible that the social environment of his workplace conveyed a pervasive message that his disability was disfavored. *Cf. Fuqua v. United Parcel Serv., Inc.*, No. 16-CV-01193-JCS, 2017 WL 4516843, at *24 (N.D. Cal. Oct. 10, 2017) (denying summary judgment to a defendant on a FEHA harassment claim because the plaintiff alleged some plausibly discriminatory comments coupled with incidents that "straddled the line" between managerial acts and not).[1]

United's counterarguments might carry water at a later stage but they do not persuade now. Generally, United addresses each individual allegation, but the inquiry is whether the whole gestalt of the FAC shows a plausible harassment case. Several of its particular arguments also have other flaws.

It is true, as United argues and as I previously found, that some of these acts are inarguably managerial or personnel actions—communicating about the meeting or terminating Quigley, for instance. *See* Prior Order 14–15. But now, the allegations of altering flights due to medical leave and co-worker hostility cast those decisions in a new light and plausibly indicate a widespread pattern of bias. In that light, those acts might plausibly fall within *Roby*'s secondary-effects doctrine.

---

[1] I dismissed Jacobsen as fraudulently joined because the only allegation about her was that she transmitted the termination letter. This Order does not affect the basis of that decision because her actions alone cannot support a valid claim under established law.

8

1    United argues that the actions by co-workers cannot help the claim because those individuals were not supervisors and comments by "by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." CAL. GOV. CODE § 12940(j)(1); Mot. 9–10. That may be so at a later stage with a factual record; the question now, however, is not whether these acts *alone* can result in liability to United, it is whether the FAC as a whole plausibly alleges a hostile work environment, which can be based on a widespread pattern of bias that results in a hostile message. Unlike United's leading case on this argument, Quigley's claim is not *solely* based on behavior by co-workers. *See Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 910–11 (E.D. Cal. 2017); Mot. 9–10. To what extent United knew or implicitly condoned the conduct will be revealed in discovery, but Quigley's allegation is that it was pervasive enough to permeate his work experience.

Relatedly, United singles out the allegation about requiring Quigley to get a doctor's note to extend his leave. Mot. 10. It contends that "employers may 'require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave.'" *Id.* (quoting *Buckman v. MCI World Com Inc.*, 374 Fed. App'x. 719, 720 (9th Cir. 2010), citing CAL. GOV. CODE § 12945.2; 29 C.F.R. § 825.302). To start, again, the question is not about the allegation in isolation. Moreover, United's argument is premature: It would be improper to assume at the pleading stage that this *was* within its custom or practice or that following that practice here was not pretextual. United's attempt at burden-shifting is revealed by its argument that "[t]here is no allegation by Plaintiff that asking for a doctor's note was outside United's usual and customary procedural requirements for requesting leave." Mot. 10. There is no authority for the view that Quigley must be held to that high a standard to survive on the pleadings. Instead, the parties will eventually present evidence on usual and customary procedures.

United turns next to Smith's alleged paperwork errors. I agree with United that there is no indication in the FAC that the errors were intentional on Smith's part, other than Quigley's assertion that it is so. *See* Mot. 10. And I previously held that all that was pleaded was a "run-of-the-mill" paperwork error. Prior Order 14. But now, Smith's two paperwork errors coupled with

United's *four* other related failures to correct the issue added to the other allegations discussed above is sufficient to plausibly show there was pervasive bias.

Finally, United takes aim at the allegation that Quigley's assignments were radically changed when he got back from medical leave. Mot. 10. As noted, this allegation is new in the FAC. It does perhaps the most work to tip the scales toward plausibility. United's sole argument on it, though, is simply that there is not a sufficient causal allegation connecting it to Quigley's disability. At this stage, Quigley cannot know what internal deliberations went in to the decision, but he has pleaded enough to make harassment plausible. The only intervening event alleged between being given mostly international flights and "exclusively" domestic flights was the medical leave. Therefore, one reasonabe inference, *Usher*, 828 F.2d at 56, is that the one resulted from the other. Tellingly, United could find no case that required more than this.

United's arguments are better aimed at summary judgment or trial. Quigley has plausibly alleged a hostile work environment based on disability in violation of FEHA. The motion for judgment on this claim is DENIED.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Quigley's ninth cause of action is for IIED. FAC ¶¶ 77–84. I previously found that this claim was inadequately pleaded for largely the same reasons that the harassment and discrimination claims were (all had roughly the same allegations). Prior Order 20–21.

In the briefing on the prior motion, United "argue[d] the claim is also foreclosed by California's workplace compensation framework." Prior Order 22 n.5. I explained that "Quigley does not address this argument. I do not either, because I grant United's motion on other grounds. <u>If Quigley chooses to reallege the IIED claim against United, he must be prepared to explain why it is not foreclosed on that basis</u>." *Id.* (emphasis added).

Quigley chose to reallege the claim and United again argues that it fails under normal 12(b)(6) principles and under the workers' compensation exclusivity doctrine. Mot. 12–14. His brief once again does not say one word about that doctrine. *See* Oppo. 7–10. It solely addresses why he thinks the allegations plausibly amount to IIED. (Much of that section of the brief is also just bald statements of law not tied to any material argument.) Under California law, some IIED

claims can be barred by the workers' compensation exclusivity doctrine. *See, e.g.*, *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014).

Quigley is obligated to respond to United's grounds for dismissal no matter the cautions he is given, but his repeated failure to do so is especially significant because I explicitly warned him about this precise issue when granting leave to amend. His lack of any argument means that he has waived or abandoned this issue. *See Chavez v. Wynar*, 421 F. Supp. 3d 891, 909 (N.D. Cal. 2019); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1014 (N.D. Cal. 2018); *Lee v. Retail Store Emp. Bldg. Corp.*, No. 15-CV-04768-LHK, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017). *Cf. Jenkins v. Cty. of Riverside,* 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). I am more skeptical than United that Quigley's claim would be barred by the doctrine, *see, e.g.*, *Brooks v. Corecivic of Tennessee LLC*, 2020 WL 5294614, at *6 (S.D. Cal. Sept. 4, 2020) (finding IIED claim based on alleged discrimination and harassment not barred), but United does not have to defend against claims that Quigley himself will not defend, especially in light of an explicit warning. Accordingly, the claim is DISMISSED WITH PREJUDICE.

## III. NEGLIGENT HIRING, SUPERVISION, OR RETENTION

Quigley's seventh cause of action is for negligent hiring, supervision, and retention. FAC ¶¶ 67–70. I previously found the claim inadequately pleaded and its basis vague. Prior Order 17–19.

This time around, Quigley makes the basis of the claim clear. He alleges that United's *supervision of Smith*—who is alleged to have twice messed up the benefits paperwork—was negligent:

> Defendants breached these duties by failing to supervise Smith, with knowledge of plaintiff's diminishing health, intentionally failed submit the appropriate paperwork to Defendants third party administrator which resulted in the cancelation of Plaintiff's insurance. Then, despite being put on notice by plaintiff of Smith's acts which resulted in the termination of plaintiff's insurance, and without requiring Smith to correct the intentional error; defendants required plaintiff to obtain a doctor's note to allow plaintiff to remain on leave.

FAC ¶ 69.

11

In California, "[a]n employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Alexander v. Cmty. Hosp. of Long Beach*, 46 Cal. App. 5th 238, 264 (2020) (internal quotation marks omitted). A plaintiff must show: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). This liability "is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996). To establish liability for negligent supervision, "a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015).

In the Prior Order, I explained that "there is no allegation that United knew or should have known that Smith would make this error. *Cf. Cty. of Riverside*, 238 Cal. App. 4th at 903–04; *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000)." Prior Order 18–19. Quigley attempts to show the required foreknowledge now by arguing that he informed O'Brien about Smith's behavior. Oppo. 7. It is unclear what the relationship was between O'Brien and Smith and O'Brien and United, and therefore whether it is sufficient to impute her knowledge to United. When an employer is liable under this theory, it must be because of the employer's *own* actions, not via vicarious liability. *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006). I will give Quigley one further opportunity to add allegations that can draw a close enough connection because it seems possible he can.

In the Prior Order, I noted that no authority had been presented that would help Quigley show that, even if there was a failure in supervision, it was a *negligent* one. I observed that it did not seem that a paperwork error like this would evidence that an employee is "unfit," which the law also requires. *See, e.g.*, *Roman Cath. Bishop v. Superior Ct.*, 42 Cal. App. 4th 1556, 1564 (1996). Quigley's brief is of no help on this front, and I have not otherwise found a case that would show actions like this suffice. (United does not have an on-point case going its way either, but it is not the one making the claim.) "Negligence" and "unfitness" have lower bounds—not

12

every slipup qualifies—and Quigley must plausibly allege actions that meet that standard. Accordingly, this claim is DISMISSED WITH LEAVE TO AMEND one final time.[2]

## CONCLUSION

The motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. It is DENIED on the harassment claim, GRANTED WITH PREJUDICE on the IIED claim, and GRANTED WITH LEAVE TO AMEND on the negligent supervision claim. Any amended complaint shall be filed within 14 days.

**IT IS SO ORDERED.**

Dated: June 24, 2021

William H. Orrick
United States District Judge

---

[2] To the extent United argues that I held that these allegations are categorically not negligent, I reject that argument; my decision was based on the authority (not) presented at the time and my own independent search. Quigley had and has done none of the basic work of showing that these actions fell below the standard of care.

13